UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RENEE M. B.,[1]

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

**DECISION AND ORDER**

1:19-cv-00922 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to disability insurance benefits ("DIB") or Supplemental Security income ("SSI") for the period April 11, 2015 to August 2, 2018. Before the court are the parties' cross-motions for judgment on the pleadings [11, 15].[2] The parties have consented to my jurisdiction [17]. Having reviewed the parties' submissions [11, 15, 16], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 1,832-page administrative record ([6], [6-1], [6-2], [6-3], and [6-4] (collectively, the "Administrative Record"[3]) is presumed. Plaintiff filed

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references are to CM/ECF pagination (upper right corner of the page).

[3]    Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

applications for DIB on May 21, 2015, and for SSI on October 19, 2015. Administrative Record, p. 23. In both applications, she alleged a disability beginning on April 11, 2015. Id.

Plaintiff's claims were initially denied. Id. An administrative hearing was held on February 14, 2018. *See* id., pp. 119-146 (transcript of hearing). Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Susan G. Smith. *See* id. On August 8, 2018, ALJ Smith issued a decision finding that plaintiff "was not disabled prior to August 3, 2018, but became disabled on that date and has continued to be disabled through the date of this decision". Id., p. 34. Following an unsuccessful request for review with the Appeals Council (id., pp. 1-7), plaintiff initiated this action.

## A.     ALJ Smith's Residual Functional Capacity Determination

ALJ Smith found that plaintiff's severe impairments were "congestive heart failure, atrial fibrillation, hypertension, chronic obstructive pulmonary disease (COPD), and diabetes mellitus".[4] Id., p. 26. ALJ Smith found that plaintiff had the residual functional capacity ("RFC") to perform light work, with some limitations:

> "claimant has the residual functional capacity to perform light work . . . except that she can no more than occasionally climb stairs or ramps, stoop, kneel, balance, crouch, or crawl, and she can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme hot and cold temperatures, and to wetness, humidity, and environmental irritants, including fumes, odors, gases, dust, and poor ventilation. She must also avoid concentrated exposure to hazards including dangerous moving machinery uneven terrain, and unprotected heights."

---

[4]     ALJ Smith also considered, but rejected as severe impairments, plaintiff's other medically determinable impairments of cataracts, chronic kidney disease, sarcoidosis, dissection and repair or aortic aneurysm, parathyroid adenomas, history of brain angioma and craniotomy, and obesity "because they have not affected and are not expected to affect the claimant more than minimally for a duration of twelve months or longer". [6], p. 31 of 522. Neither plaintiff nor the Commissioner challenges ALJ Smith's findings concerning plaintiff's severe impairments.

Id., p. 27.

    To support her RFC findings, ALJ Smith outlined some of the findings contained within over 1,300 pages of medical records (id., pp. 28-31) and considered opinions concerning plaintiff's physical functional limitations from four sources: 1) consultative examiner Hongbiao Liu, M.D. 2) treating cardiologist Kenneth L. Gayles, M.D.; 3) ECOG[5] scores in plaintiff's records from Roswell Park Cancer Institute; and 4) treating nurse practitioner Merlie M. Barcena; Id., pp. 31-32.

    a.  **Consultative Examiner Liu**

    ALJ Smith assigned "some weight" to Dr. Liu's September 21, 2015 opinion. Id., p. 32. Dr. Liu found that plaintiff had a "mild to moderate limitation for prolonged walking, bending, and kneeling" and stated that plaintiff "should avoid moderate exercise activity because of cardiac condition". Id., pp. 638. His report did not include any other specific functional limitations. ALJ Smith found it significant that Dr. Liu's opinion was "consistent with the medical evidence of the record as a whole", but found it "vague and imprecise in describing the claimant's functional limitations". Id. at 32. ALJ Smith noted that "the terms 'mild' and 'moderate' are undefined and have unclear meaning in the context of Dr. Liu's statement", but nonetheless found that Dr. Liu's "assessment is not inconsistent with the above modified light RFC". Id., p. 32.

    b.  **Treating Cardiologist Gayles**

    ALJ Smith gave "little weight" to the limitations assessed by plaintiff's treating cardiologist, Dr. Gayles in his January 11, 2018 Cardiac Treating Medical Source Statement. Id.,

---

[5]  The ECOG Scale of Performance Status was developed by the Eastern Cooperative Oncology Group in 1982 and is a measurement used to describe a cancer patient's level of functioning in terms of his or her ability to care for him or herself, daily activity, and physical ability such as walking,, working, etc. *See* https://ecog-acrin.org/resources/ecog-performance-status, last visited February 24, 2021.

p. 31; *see also* Administrative Record, pp. 1777-81.  He based his functional assessment upon plaintiff's monthly visits with him from March 3, 2015 through January 11, 2018.  *See* id., pp. 1777, 1781.  In his functional assessment, Dr. Gayles identified the findings and laboratory tests that showed the plaintiff's impairments:

> 4. Identify the clinical findings, laboratory and test results that show your patient's medical impairments: Echocardiogram - Hypertrophic Cardiomyopathy
> ECG: Atrial Fibrillation

Id., p. 1777.  He identified plaintiff's symptoms:

> 5. Identify all of your patient's *symptoms:*
> ☑ chest pain
> ☐ anginal equivalent pain
> ☑ shortness of breath
> ☑ fatigue
> ☑ weakness
> ☐ edema
> ☑ nausea
> ☑ palpitations
> ☑ dizziness
> ☑ sweatiness

Id.  Dr. Gayles stated that plaintiff has a "marked limitation of physical activity" "as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though [plaintiff] is comfortable at rest".  Id.  He opined that plaintiff was "[i]ncapable of even 'low stress' jobs" because stress "can exacerbate/initiate [plaintiff's] symptoms".  Id., p. 1778.  In the section of the form dedicated to functional limitations, Dr. Gayles estimated that, if "placed in *a competitive work situation*", plaintiff could walk approximately one block "without rest or severe pain".  Id. (emphasis in original). In an 8-hour workday, Dr. Gayles indicated plaintiff could "stand/walk" "less than 2 hours" and sit "about 4 hours".  He estimated that during an 8-hour workday, plaintiff would need to take unscheduled breaks approximately every 30 minutes to lie down or sit quietly for approximately 30 minutes.  Id.  He estimated plaintiff would likely be absent from work as the result of her impairments or

for treatment "[m]ore than four days per month". Id., p. 1781. He also assessed plaintiff's other functional abilities in a competitive work situation:

f. How many pounds can your patient lift and carry in a competitive work situation?

| | Never | Rarely | Occasionally | Frequently |
|---|---|---|---|---|
| Less than 10 lbs. | — | ✓ | — | — |
| 10 lbs. | ✓ | — | — | — |
| 20 lbs. | ✓ | — | — | — |
| 50 lbs. | ✓ | — | — | — |

g. How often can your patient perform the following activities?

| | Never | Rarely | Occasionally | Frequently |
|---|---|---|---|---|
| Twist | — | ✓ | — | — |
| Stoop (bend) | — | ✓ | — | — |
| Crouch/ squat | — | ✓ | — | — |
| Climb ladders | ✓ | — | — | — |
| Climb stairs | — | ✓ | — | — |

h. State the degree to which your patient should avoid the following:

| ENVIRONMENTAL RESTRICTIONS | NO RESTRICTIONS | AVOID CONCENTRATED EXPOSURE | AVOID EVEN MODERATE EXPOSURE | AVOID ALL EXPOSURE |
|---|---|---|---|---|
| Extreme cold | — | — | — | ✓ |
| Extreme heat | — | — | — | ✓ |
| High humidity | — | — | ✓ | — |
| Wetness | — | — | — | ✓ |
| Cigarette smoke | — | — | — | ✓ |
| Perfumes | — | ✓ | — | — |
| Soldering fluxes | — | — | — | ✓ |
| Solvents/cleaners | — | — | ✓ | — |
| Fumes, odors, gases | — | ✓ | — | — |
| Dust | — | ✓ | — | — |
| Chemicals | — | — | ✓ | — |
| List other irritants: | — | — | — | — |
| _____ | — | — | — | — |
| _____ | — | — | — | — |

Id., p. 1780.

        ALJ Smith assigned Dr. Gayles' opinion little weight because:

> "The symptoms and limitations that Dr. Gayles describes are not adequately supported by objective evidence, and are inconsistent with the medical evidence of the record, including the physical examinations with largely mild signs of limitation, and the treatment records showing largely stable symptoms during most of the period at issue in this claim that did not significantly interfere

-5-

with the claimant's daily functioning or her ability to perform basic physical activities[.]"

Id., p. 31 (internal citation to medical exhibits in the Administrative Record omitted).

### c.   Treating Nurse Practitioner Barcena

NP Barcena's opinion states, "[Plaintiff] is unable to work due to her chronic illnesses" and identifies plaintiff's various diagnoses. *See* Id., p. 642. ALJ Smith assigned this opinion "little weight" because NP Barcena "does not describe the specific symptoms or functional limitations that she believes would prevent the claimant from working", "the question of whether the claimant can perform work is an issue reserved to the Commissioner", and NP Barcena is not an acceptable medical source. Id., p. 31.

### d.   Roswell Park ECOG Scores

Finally, ALJ Smith identified ECOG scores in the record "indicating no restrictions". Id. at 32. ALJ Smith considered these scores, but did not assign them significant weight "as it appears that the greater weight of the evidence supports some restrictions to modified light exertion. Nonetheless they do show that greater restrictions are not substantiated by objective factors". Id., p. 32.

In addition, ALJ Smith considered plaintiff's testimony of her functional limitations, including testimony about the severity and frequency of her symptoms and her ability to perform physical activities. Id., p. 28. She was not looking for work at the time because of her atrial fibrillation: "I stay in the AFib and I'll be tired a lot and I can't do a lot of things that I normally used to do". Id., p. 128. Plaintiff testified that she no longer engages in activities like running, roller skating, riding a bike or going to the mall because she experiences cardiac symptoms ("my heart feel[s] like it's a constant pull") even while at rest on a daily basis. Id., p. 129. When she experiences symptoms, they last half an hour to an hour and she sits down

to rest. Id. at 130. This happens more than once in a day. Id. She experiences shortness of breath climbing stairs, and when walking. Id. She estimated she can walk continuously for "about ten minutes" before stopping to rest. Id., p. 131. Although she can wash her dishes, she does not do her laundry because her washer and dryer are in the basement. Id. She does not dust, mop, or sweep. Id., p. 132. She stopped doing housework in approximately 2016 due to "the fatigue factor". Id. Approximately once per week, she experiences symptoms due to her diabetes. "When it drops low, I break out into a cold sweat. I shake and feel like I'm going to pass out." Id., p. 133. She also experiences neuropathy in her feet. Id., p. 135. When she experiences this symptom, she can stand for only approximately half an hour. Id. She stays "mostly in the house" and no longer goes to the library, to church, or to visit family. Id., p. 136. Her daily activities consist mostly of bathing, getting her meals, and resting. Id., p. 135.

Based upon the RFC and the vocational expert's testimony, ALJ Smith determined that plaintiff could not perform her past work. Id., p. 32. She also determined that the plaintiff was within "a few days to a few months" of attaining the age category of an individual of advanced age. Id., p. 32-33. Because applying plaintiff's chronological age would result in a denial of plaintiff's claim, ALJ Smith found that the age categories "should not be applied mechanically" and found that plaintiff's "age category changed to an individual of advanced age" "on August 3, 2018". Id., p. 32. Accordingly, she determined that plaintiff became disabled on August 3, 2018. Id., p. 34. Before that date, however, she determined that, "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed". Id., p. 33. Thereafter, this action ensued.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     Was the RFC Supported by Substantial Evidence?**

Plaintiff argues that the RFC is not supported by substantial evidence because she "failed to properly evaluate the opinion of treating cardiologist Dr. Gayles according to the treating physician rule". Plaintiff's Memorandum [11-1], pp. 17-24. Specifically, plaintiff argues that ALJ Smith failed to provide "good reasons" for rejecting Dr. Gayles' functional assessment (id., p. 18) and then failed to discuss the factors required by Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008) to demonstrate why she assigned "little" weight to this treating specialist's functional assessment. See id., pp. 18-19, 21-22. Instead of failing to credit Dr. Gayles' opinion due to perceived inconsistencies between the functional assessment and other medical records, plaintiff argues ALJ Smith should have re-contacted Dr. Gayles for clarification. See id., p. 21-22. Due to these failures, plaintiff argues "[t]here is no way for this Court to engage in any meaningful

-8-

review of this RFC, as there is no way to determine why the ALJ arrived at the RFC that she did and what she based it on, besides her own lay interpretation of bare medical findings".

The Commissioner argues that the ALJ conducted a proper analysis of Dr. Gayles' opinion when she concluded that "Dr. Gayles' limitations were not supported by the objective medical evidence". Commissioner's Response [15-1], p. 17. The Commissioner argues further that, despite ALJ Smith's failure to explicitly address the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c), her determination to assign little weight to Dr. Gayles' opinion should be affirmed because "a searching review of the record makes it clear that Dr. Gayles' opinion could not be afforded controlling weight." Id., pp. 18-19.

I agree with plaintiff that the RFC is not supported by substantial evidence due to the legal errors in ALJ Smith's analysis of Dr. Gayles' functional assessment. Accordingly, remand is required for a proper RFC analysis, and for further development of the record, if necessary.

It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. See Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)"). Further, when an ALJ assesses a functional limitation, those limitations must be supported by medical evidence in the record. Absent a competent medical opinion concerning a plaintiff's functional abilities, an ALJ is "not qualified to assess a

claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating Physician . . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). *See also* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . ., particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)).[6] The Second Circuit has advised that the courts should "not hesitate to remand when

---

[6] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed before that date.

the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Moreover, where an RFC incorporates some portions of the treating physician's functional assessment, but not others, remand is appropriate. "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006).

### a. ALJ Smith Did Not Provide "Good Reasons" for Rejecting the Functional Limitations Assessed by Dr. Gayles

Dr. Gayles is plaintiff's treating cardiologist. His records of plaintiff's treatment comprise over 200 pages of the Administrative Record. *See* Administrative Record, pp. 523-67, 773-995. Those records include treatment notes for approximately 20 visits spanning nearly three years of treatment. *See* id., pp. 775, 793, 797, 808, 817, 821, 843, 845, 863, 881, 890, 905, 925, 937, 941, 952, 960, 975, 980. Dr. Gayles' records contain records of plaintiff's visits to the emergency room due to cardiac issues (*see, e.g.* id., pp. 852, 878) and a number of reports of the results of various cardiac function and heart rate tests (*see, e.g.* id., pp. 780, 790, 800, 801, 802, 867, 887, 909, 912, 917, 928, 979, 985, and 986). ALJ Smith's discussion of Dr. Gayles' functional assessment states, in its entirety:

> "Little weight is given to the January 11, 2018 statement of cardiologist Kenneth L. Gayles, M.D. describing debilitating symptoms causing extreme physical limitations, including an inability to maintain a fulltime work schedule (12F)[7]. The symptoms and limitations that Dr. Gayles describes are not

---

[7] ALJ Smith's references correspond to medical evidence in the Administrative Record labeled as exhibits 12F (Dr. Gayles' functional assessment, pp. 1777-84); 3F (office records of the Diabetes Center of WNY, pp. 568-633); 4F (Dr. Liu's report, pp. 634-40); 8F (hospital records from Buffalo Medical Group, pp. 688-772); 9F (office records from Dr. Gayles, pp. 773-995); 10F (hospital records from Buffalo General Hospital, pp. 996-1100); and 14F (hospital records from Buffalo General Hospital, pp. 1796-828).

> adequately supported by objective evidence, and are inconsistent with the medical evidence of record, including the physical examinations and largely mild signs of limitation, and the treatment records showing largely stable symptoms during most of the period at issue in this claim that did not significantly interfere with the claimant's daily functioning or her ability to perform basic physical activities (see, e.g., 3F; 4F; 8F; 9F; 10F; 14F)."

Id., p. 31. Even if these reasons are sufficient to support ALJ Smith's decision to afford Dr. Gayles' opinion less than controlling weight, her cursory explanation does not satisfy her obligation to address the factors outlined in 20 CFR §§ 404.1527(c) and 416.927(c). *See also* Burgess, supra. ALJ Smith appears to identify in her decision the "supportability" and "consistency" factors outlined in 20 CFR § 404.1527(c) and § 416.927(c).

First, although ALJ Smith states that Dr. Gayles' opinions "are not adequately supported by objective evidence", she fails to elaborate. Dr. Gayles identified in his functional assessment the "clinical findings, laboratory and test results" that showed plaintiff's impairments: "[e]chocardiogram – [h]ypertrophic [c]ardiomyopathy" and "ECG: [a]trial [f]ibrillation". Dr. Gayles' treatment records contain several reports of these diagnostic tests performed at different times throughout plaintiff's treatment. *See*, *e.g.* Administrative Record, pp. 800-801 (ECG reports stating "[a]trial fibrillation"); *see also* Echocardiogram Reports dated 4/29/2016 (pp. 867-68), 7/6/2016 (pp. 887-88); 3/3/2017 (pp. 928-930), 11/28/2017 (pp. 986-87). In addition, Dr. Gayles stated in his functional assessment that plaintiff's impairments are "reasonably consistent" with the symptoms and functional limitations he describes in his evaluation.

Elsewhere in her decision, ALJ Smith acknowledges the reports of the echocardiogram reports in the record. Id., p. 29. In the same paragraph, ALJ Smith identifies other diagnostic tests that report some "normal" findings concerning plaintiff's cardiac functions.

-12-

ALJ Smith also points to "[p]hysical examinations with treating providers" that "had largely normal results, including normal breathing, although irregular hear rhythm was often observed (see, e.g., 8F; 9F; 14F)." Id., p. 30. However, ALJ Smith does not identify any medical source who opines that the positive findings identified by Dr. Gayles are insufficient to produce the symptoms he documented or to support the limitations he identifies in his report. To the extent that ALJ Smith was left with questions concerning whether the diagnoses and findings identified by Dr. Gayles could produce the symptoms he recorded, or support his opinion concerning plaintiff's limitations notwithstanding that plaintiff's other examination findings were "normal", she had the duty to seek that clarification to ensure a full and complete record:

> "[T]he ALJ's determination that Dr. Thomas's opinion was 'not well explained' is not a 'good reason' for assigning it little weight. That is because to the extent the record is unclear, the Commissioner has an affirmative duty to fill any clear gaps in the administrative record before rejecting a treating physician's diagnosis . . . In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal."

Vanice v. Commissioner, 2019 WL 2448431, *6 (W.D.N.Y. 2019) (internal quotations, citations and alterations omitted). See also Burgess, 537 F.3d at 128 ("because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record") (internal quotations and alterations omitted).

ALJ Smith's reliance upon "normal" results of physical examination of the plaintiff similarly fails to provide good reasons to assigning little weight to Dr. Gayles' opinion. ALJ Smith states:

> "The results of physical examinations indicate an ability to perform most basic physical activities without significant limitation. At the consultative examination, the claimant was in no acute distress and exhibited normal gait, and stance, got on and off

>     the examination table without help, and rose from a chair without
>     difficulty, but had some difficulty with balancing (4F/3). The
>     examiner observed an irregular heartbeat (4F/4). Physical
>     examinations with treating providers had largely normal results,
>     including normal breathing, although irregular heart rhythm was
>     often observed (see, e.g. 8F, 9F; 14F)."

Administrative Record, p. 30. As an initial matter, it is by now well-settled that a plaintiff "need not be an invalid to be found disabled". Reinard v. Astrue, 2010 WL 2758571, *8 (W.D.N.Y. 2010). "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." Scott v. Berryhill, 2018 WL 6582794, *6 (W.D.N.Y. 2018) (internal quotations omitted). Activities such as rising from a chair, walking during a medical examination, and getting on or off of an examination table are not indicative of an ability to perform any of these activities as part of full time work. Moreover, the plaintiff's ability to perform these activities during a medical examination is not inconsistent with Dr. Gayles' opinion of plaintiff's functional limitations "in a competitive work situation" during "an 8 hour working day". *See* Administrative Record, pp. 1778-80.

        To the extent that ALJ Smith independently interpreted the diagnostic findings to make her own determination concerning the severity of plaintiff's condition and the extent to which the diagnostic findings supported functional limitations, such an assessment is improper. An ALJ may not "impermissibly rely[] on his own lay opinion to fill perceived gaps in the evidentiary record." Primes v. Colvin, 2016 WL 446521, *4 (W.D.N.Y. 2016).

        ALJ Smith did not explicitly address the remaining Burgess factors. Although she summarily asserts that she "considered opinion evidence in accordance with the requirements of 20 CFR [§§] 404.1527 and 416.927", her Decision does not demonstrate that she did so. For example, ALJ Smith did not acknowledge anywhere in her Decision the "frequency, length, nature, and extent" of Dr. Gayles' treatment. Nor did she explain why, given the frequency

(approximately monthly), length (nearly three years), nature (treating specialist personally examining plaintiff and analyzing her diagnostic test results) and extent (regular monitoring, examination, and treatment of plaintiff's cardiac condition) of Dr. Gayles' treatment, Dr. Liu's otherwise "vague" opinion (Administrative Record, p. 32), based upon a single examination, was accorded greater ("some") weight. Id., p. 32.

Similarly, ALJ Smith completely failed discuss Dr. Gayles' specialty (the last Burgess factor) as part of her analysis of the weight she assigned to his functional assessment. *See* 20 CFR §§ 404.1527(c)(5) and 416.927(c)(5) ("[w]e generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist"). ALJ Smith acknowledges that Dr. Gayles is a "cardiologist" the first time she mentions him on page 9 of her Decision. Aside from that, however, ALJ Smith does not address Dr. Gayles' specialty in the context of her RFC analysis.

ALJ Smith's failure to give good reasons for not according Dr. Gayles' opinion controlling weight, and then failing to adequately address any of the Burgess factors was legal error.

        **b.**     **ALJ Smith Did Not Explain Her Incorporation of Some of Dr. Gayles' Restrictions, but Not Others.**

This matter must also be remanded due another, but related legal error. ALJ Smith appeared to incorporate some of Dr. Gayles' limitations and their severity, but not others, into the RFC, with no explanation. Even if ALJ Smith was entitled to do so, her failure to explain her reasoning was a legal error. "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." Dioguardi, 445 F.Supp.2d at 297.

Dr. Liu's opinion, to which ALJ Smith gave "some" weight, opined only "mild to moderate limitations for prolonged walking, bending, and kneeling" and stated plaintiff should "avoid moderate exercise activity" because of her cardiac condition. He also noted in his report that plaintiff had difficulty keeping her balance while walking on heels and toes and squatting. The RFC, however, was far more specific and included limitations to climbing stairs or ramps, stooping, kneeling, balancing, crouching, crawling, and climbing ladders, ropes, and scaffolds. Assuming that Dr. Liu's opinion concerning "bending" and "kneeling" encompasses stooping, kneeling, and crouching (which ALJ Smith does not state in her Decision), Dr. Liu did not comment on plaintiff's ability to climb stairs, ramps, ladders, ropes, or scaffolds. Dr. Gayle, however, opined that plaintiff should never climb ladders and only rarely climb stairs. ALJ Smith did not state why she credited Dr. Gayle's opinion that plaintiff was limited in climbing stairs, or why, notwithstanding that she included this limitation in the RFC, she determined that plaintiff could "occasionally" (compared to Dr. Gayles' "rarely") climb stairs, but apparently agreed with Dr. Gayles that plaintiff could "never" climb ladders.

In addition, ALJ Smith included a number of environmental limitations in the RFC, stating that plaintiff "must avoid concentrated exposure to extreme hot and cold temperatures, and to wetness, humidity, and environmental irritants, including fumes, odors, gases, dust, and poor ventilation". Dr. Liu did not include any environmental limitations in his assessment. Dr. Gayles, however, included a number of environmental restrictions in his functional assessment, including: "all exposure" to extreme cold and heat; "moderate exposure" to wetness, humidity, fumes, odors, and chemicals; and "concentrated exposure" to dust. ALJ Smith did not explain why she credited Dr. Gayles' opinion that these environmental restrictions were appropriate to include in the RFC, but not to the extent that Dr. Gayles opined.

Lastly, ALJ Smith included in the RFC a restriction to exposure to other "hazards", such as "dangerous moving machinery, uneven terrain, and unprotected heights". These restrictions do not appear in any of the functional assessments.

ALJ Smith's failure to describe the basis for these elements of the RFC was legal error.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [15] is also denied.

**SO ORDERED**.

Dated: February 24, 2021

                                                    /s/ Jeremiah J. McCarthy
                                                    JEREMIAH J. MCCARTHY
                                                    United States Magistrate Judge